UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JENNIFER N. O/B/O J.F.N.,[1]

       Plaintiff,

  v.                                            19-CV-1672-LJV
                                                      DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

On December 16, 2019, the plaintiff, Jennifer N. ("Jennifer"), on behalf of J.F.N., a minor child under 18 years of age, brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that J.F.N. was not disabled. Docket Item 1. On May 12, 2020, Jennifer moved for judgment on the pleadings, Docket Item 8; on August 5, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on August 26, 2020, Jennifer replied, Docket Item 12.

For the reasons stated below, this Court grants Jennifer's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ("ALJ")] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Jennifer argues that the ALJ erred by failing to "acknowledge or evaluate the teacher[-]questionnaire opinion from J.F.N.'s special education teacher[, Ashley]

2

Magar." Docket Item 8-1 at 11. This Court agrees that the ALJ erred and, because that error was to J.F.N.'s prejudice, remands the matter to the Commissioner.

In evaluating a claim of disability, the Commissioner "will consider *all evidence* in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(3) (emphasis added). Relevant evidence includes objective medical evidence such as laboratory findings, medical opinions, subjective and nonmedical evidence such as the testimony of the claimant and third parties, and prior administrative findings. *Id.* § 404.1513(a). Before an ALJ may deny a claimant's application, he must "confront the evidence in [the claimant's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

"[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). An ALJ also must consider the opinions of "other sources"—such as "school teachers"[3]—but is "free to discount" such opinions "in

---

[3] Although "school teachers" are "[o]ther sources" whose opinions cannot "establish the existence of a medically determinable impairment," an opinion from such a source still could "outweigh the opinion from a medical source"—if, for example, the non-medical source "has seen the individual more often and has greater knowledge of the individual's functioning over time" and that source's opinion has "better supporting evidence and is more consistent with the evidence as a whole." *See* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *2 (Aug. 9, 2006), 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006). Because Ms. Magar interacted with J.F.N. daily for eight months, the ALJ could reasonably find that her opinion deserves significant weight.

3

favor of the objective findings of other medical doctors." *Id.* at 108-09.  Nevertheless, the ALJ should explain the weight assigned to the opinions of "other sources" that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning," SSR 06-03P, 2006 WL 2329939, at *6.

The Code of Federal Regulations ("the Code"), 20 C.F.R. § 404.1527(c), enumerates six factors that the ALJ should consider in giving weight to the opinion of an "other source":

> [1] the length and frequency of the treating relationship; [2] the nature and extent of the relationship; [3] the amount of evidence the source presents to support his or her opinion; [4] the consistency of the opinion with the record; [5] the source's area of specialization; [6] and any other factors the claimant brings to the ALJ.

*See Tolliver v. Astrue*, 2013 WL 100087, at *3 (W.D.N.Y. Jan. 7, 2013) (citations omitted) (summarizing the factors from the Code).  Using those factors to articulate the ALJ's reasoning is more than just a good idea.  In *Tolliver*, for example, the court remanded when the ALJ failed to use those factors to explain why he assigned little weight to the "other source" opinion of a nurse practitioner who saw the patient more frequently than did the treating physician.  *Id.*; *cf. Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (holding that "[a]n ALJ's failure to 'explicitly' apply the [section 404.1527(c)] factors when assigning weight" to a treating source opinion "is a procedural error" (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam))).

The ALJ here did not evaluate—or even mention—Ms. Magar's teacher-questionnaire opinion.  *See* Docket Item 6 at 21-23.  In the questionnaire, Ms. Magar

identified several domains in which J.F.N. had serious limitations. *See id.* at 223-30. More specifically, Ms. Magar found that J.F.N. "ha[d] problems functioning" in the domains of interacting and relating with others; caring for herself; attending and completing tasks; and acquiring and using information.[4] *See id.* In the domain of interacting and relating with others, for example, Ms. Magar noted that J.F.N. had "[a] serious problem" "[s]eeking attention appropriately"; "[a]n obvious problem" "[p]laying cooperatively with other children"; "[a]n obvious problem" "[m]aking and keeping friends"; and "[a]n obvious problem" "[e]xpressing anger appropriately." *Id.* at 226. Likewise, in the domain of caring for oneself, Ms. Magar found that J.F.N. had "[a] very serious problem" "[h]andling frustration appropriately"; "[a] serious problem" "[r]esponding appropriately to changes in [her] own mood (e.g., calming self)"; "[a] serious problem" "[u]sing appropriate coping skills to meet [the] daily demands of [a] school environment"; "[a]n obvious problem" "[b]eing patient when necessary"; and "[a]n obvious problem" "[i]dentifying and appropriately asserting [her] emotional needs." *Id.* at 228. She reached similar findings in two other domains. *See id.* at 224-25. And many of these issues occurred every day. *See id.* at 226, 228.

Although the ALJ was not required to accept Ms. Magar's opinion wholesale, he was required at least to acknowledge and evaluate it in light of the 20 C.F.R. § 404.1527(c) factors. *See Tolliver*, 2013 WL 100087, at *3. His failure to do so was error. *See Estrella*, 925 F.3d at 96. "Because the ALJ procedurally erred, the question

---

[4] In childhood disability cases, the ALJ evaluates the child's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

becomes whether 'a searching review of the record assures [this Court] that the substance of the rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for [rejecting Ms. Magar's] opinion." *See id.* (original alterations omitted) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

In fact, the 20 C.F.R. § 404.1527(c) factors support assigning Ms. Magar's opinion significant weight. When Ms. Magar completed the questionnaire, she had been J.F.N.'s special education teacher for eight months, and her opinion was based on her personal observation of J.F.N. over that time. *See* Docket Item 6 at 223; *see also* 20 C.F.R. § 404.1527(c) (considering the length, frequency, nature, and extent of the relationship as well as the source's area of specialization). Moreover, in cases like these, "teachers are 'valuable sources of evidence for assessing impairment severity and functioning' based on their close interaction with students on a regular basis." *Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 423 (N.D.N.Y. 2012) (quoting SSR 06-03P, 2006 WL 2329939, at *3).

What is more, Ms. Magar's findings are well supported by the record. *See* 20 C.F.R. § 404.1527(c) (considering the consistency of the opinion with the record). In the domain of caring for oneself,[5] for example, Ms. Magar found that J.F.N. had a "very

---

[5] To evaluate the domain of caring for oneself, an ALJ "consider[s] how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s her] physical and emotional wants and needs met in appropriate ways; how [the child] cope[s] with stress and changes in [her] environment; and whether [the child] take[s] care of [her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k).

serious problem" handling her frustration appropriately, describing it as a "[w]eekly" issue.  Docket Item 6 at 228.  She also found that J.F.N. had "serious problem[s]" "calming [her]self" and "[u]sing appropriate coping skills" "[d]aily."  *Id.*  And there are numerous reports in the record of J.F.N. throwing things or threatening to hurt herself when she was upset or did not get her way.  *See, e.g.*, *id.* at 43, 54 (Jennifer testifying that J.F.N. "pull[s] her hair[,] . . . [says that] nobody cares [or] loves her[,]" and "threatens to kill herself almost daily"); *id.* at 398 (treatment notes reporting "[J.F.N.] threatened to kill herself . . . [and that she] told [Jennifer] that if [she] killed [her]self [Jennifer] wouldn't visit [her] grave"); *id.* at 426 (intake notes explaining that "[J.F.N.] still mentions hurting herself when she is punished or not getting her way").  J.F.N. admitted "hitting her head against the wall and pulling on her eyes when she is upset."  *Id.* at 407.  And Jennifer testified that "[J.F.N.] doesn't like change"—the "slight[est] mishap in a schedule [] throws [J.F.N.] off completely."  *Id.* at 44; *see also id.* at 244-45 (psychological report explaining that J.F.N. "[n]ever . . . . [r]ecovers quickly after a setback" or "[a]djusts well to changes in routine").

Similarly, in the domain of interacting and relating with others,[6] Ms. Magar found that J.F.N. had an "obvious problem" cooperating with her classmates and making

---

The ALJ should consider such factors as the child's ability to self-regulate and "cope with negative feelings . . . appropriately" and whether the child "return[s] to a state of emotional equilibrium" after being upset.  *See* 09-7P, 2009 WL 396029, at *3 (Feb. 17, 2009).  Whether the child engages in self-harming behavior and whether the child can age-appropriately dress, bathe, and feed herself also are relevant.  *See id.* at *6.

[6] To determine how well a child interacts and relates with others, an ALJ "consider[s] how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others."  *See* 20 C.F.R. § 416.926a(i).  The ALJ should consider the child's ability to form friendships with her peers; how disruptive a child is; and whether

friends and a "serious problem" expressing her anger appropriately.  *See id.* at 226.  These were daily issues.  *Id.*  And both Jennifer and J.F.N. corroborated this, testifying that J.F.N. does not have any close friends and often fights with her siblings.  *Id.* at 47-48, 59-60, 63.  In fact, Jennifer reported that J.F.N. gets in fights at school once or twice a year.  *Id.* at 49; *see also id.* at 303 (fighting incident report).  J.F.N.'s 2015 individualized education program noted that when J.F.N. "work[s] in groups[,] she tries to dominate the activity[,] . . . [and she] often expresses annoyance with [her] peers when interacting with them."  *Id.* at 234.

J.F.N.'s relationship with her sisters is even worse: she becomes "aggressive" toward them "about 3[ to ]4 times[ a ]day."  *Id.* at 756.  She bites them, *id.* at 398, and "[w]hen [J.F.N.'s] sisters make her mad she feels they deserve to be hit or have their hair pulled," *id.* at 453.  The state consultant, C. Walker, Ph.D., completed a mental residual functional capacity assessment for J.F.N. and opined that J.F.N. had "[m]arked" limitations in this domain for these very reasons.  *See id.* at 77.

Indeed, notwithstanding the serious issues J.F.N. had in school, the record suggests that J.F.N. managed her relationships better in school than at home.  *See, e.g.*, *id.* at 240 (psychological report noting a "large discrepancy between [J.F.N.'s] behavior at home and at school, as there were only minor behavior concerns at school"); *id.* at 426-27, 480-81 (treatment notes reporting that J.F.N. has difficulty getting along with some girls in school, but her behavioral issues primarily are at home).  And that is not surprising since the Code recognizes that a structured educational

---

the child "[h]as difficulty cooperating with others" or "playing games or sports with rules."  *See* SSR 09-5p, 2009 WL 396026, *6-*7 (Feb. 17, 2009).

8

setting "may minimize signs and symptoms of [a claimant's] impairment(s)."[7]  See 20 C.F.R. § 416.924a(b)(5)(iv)(C).  So J.F.N.'s ability to interact and relate with others may well be worse than is reflected in Ms. Magar's opinion.

The ALJ's error in ignoring Ms. Magar's opinion was not harmless.  In concluding that J.F.N. was not disabled, the ALJ found that J.F.N. had a "marked limitation in attending and completing tasks"; "no limitation in moving about and manipulating objects"; and "less than marked" limitations in the remaining domains.  Docket Item 6 at 23-29.  If the ALJ found that J.F.N. had at least a marked limitation in only one other domain—interacting and relating with others *or* caring for herself, for example—J.F.N. would have been disabled.  See 20 C.F.R. § 416.926a(d) (explaining that a child's impairment is of listing-level severity if there are "marked" limitations in at least two domains or an "extreme"[8] limitation in one domain).  The Code defines a "marked" limitation as one where the child's impairments "seriously interfere with [the child's]

---

[7] Because a structured educational setting "may minimize signs and symptoms of [a claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [she has] or would have outside the structured setting."  20 C.F.R. § 416.924a(b)(5)(iv)(C).  "Even if [the claimant is] able to function adequately in the structured or supportive setting, [the ALJ] must consider how [the claimant] function[s] in other settings and whether [the claimant] would continue to function at an adequate level without the structured or supportive setting."  *Id.*  For example, "if [the claimant's] symptoms or signs are controlled or reduced in a structured setting," the ALJ must "consider. . . the amount of help [the claimant needs] from [his or her] parents, teachers, or others to function as well as [she does]; adjustments [made] to structure [the claimant's] environment; and how [the claimant] would function without the structured or supportive setting."  *Id.* § 416.924a(b)(5)(iv)(E).  The ALJ did not engage in that analysis here.  See Docket Item 6 at 26.

[8] An "extreme" limitation results when impairments "interfere[] very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(3)(i).

9

ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). And Ms. Magar opined that J.F.N. had several "serious" and "very serious" problems within the domains of interacting and relating with others and caring for oneself, *see* Docket Item 6 at 223, 226, suggesting the very real possibility of at least marked limitations in those domains.

The Commissioner suggests that because the "form Ms. Magar used does not define the terms 'obvious,' 'serious,' and 'very serious,'" the ALJ did not err in failing to address her opinion. *See* Docket Item 11-1 at 20. This Court disagrees. Any ambiguity about Ms. Magar's opinion is not good reason to discount it—especially because the record is replete with evidence corroborating it. *See supra*. Rather, if the ALJ had questions about Ms. Magar's opinion—or if he found it vague or unclear—it was incumbent on the ALJ to contact Ms. Magar for clarification rather than simply discounting or rejecting her opinion. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.").

The Commissioner also argues that other evidence—and especially the evaluation of another teacher, Julia Robinson—supports the ALJ's conclusion that J.F.N. was not disabled. *See* Docket Item 11-1 at 14-19. Along the same lines, the Commissioner suggests that even if the ALJ erred in ignoring Ms. Magar's opinion, any error was harmless because the ALJ relied heavily on the opinion of Ms. Robinson, a teacher who observed J.F.N. longer than—and after—Ms. Magar observed her. *Id.* at

21-23.  Therefore, the Commissioner asserts, the ALJ would have reached the same conclusion even if he had considered Ms. Magar's opinion.  *Id.*

The Commissioner misses the point.  There is no way for this Court to know whether the ALJ simply missed Ms. Magar's opinion; considered but rejected it; or found that other opinions, including Ms. Robinson's, outweighed it.  Likewise, there is no way to know whether the Commissioner is correct in asserting that the ALJ would have reached the same conclusion even if he had considered Ms. Magar's opinion.  And there is no way for this Court to evaluate the ALJ's analysis in light of that omission.  The error in failing to address Ms. Magar's opinion, together with the real possibility that it would have made a difference, is enough to require remand.  *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (May 26, 2020) (remanding where the ALJ failed to consider an opinion that "could have resulted in a finding of disability . . . if given weight by the ALJ"); *see also Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (It is foundational principle of administrative law that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting another source) (noting that courts "may not accept . . . *post hoc* rationalizations for agency action").

In sum, the ALJ erred in not even addressing Ms. Magar's opinion.  Had the ALJ evaluated Ms. Magar's opinion using the 20 C.F.R. § 404.1527(c) factors, he reasonably could have found that her opinion deserves significant weight.  And because Ms. Magar's opinion supports a finding that J.F.N. was disabled, the ALJ's failure to

evaluate—or even acknowledge—that opinion prejudiced J.F.N.  This Court therefore remands the matter to the Commissioner.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 11, is DENIED, and Jennifer's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   March 10, 2021
         Buffalo, New York

                                    _/s/ Lawrence J. Vilardo_
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE